UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

TAXES OF PUERTO RICO, INC., et al.,

Plaintiffs,

v.

TAXWORKS, INC., et al.,

Defendants.

Civil No. 12-2059 (JAF)

## OPINION AND ORDER

We must decide whether this court is an appropriate venue for the plaintiffs to bring

their case in light of two venue selection clauses contained in contracts they entered into with

the defendants.

**I.**
**Background**
TaxWorks, a Delaware corporation, provides accountants and professional tax

preparers with software to assist in the preparation and electronic filing of individual tax

returns.  Taxes of Puerto Rico distributed TaxWorks' software to commercial clients in

Puerto Rico, including the individual plaintiffs.  During the 2012 tax season, the plaintiffs

encountered a number of problems with TaxWorks' software.  The individual plaintiffs,

joined by Taxes of Puerto Rico, brought suit against TaxWorks.  (Docket No. 1.)  Both sides

to the dispute seem to agree that there are claims here that need adjudication.  What they

cannot agree on is *where* those claims should be adjudicated.

There are two clauses at issue in understanding where this dispute would be best

adjudicated.  First, the software distributed by TaxWorks contains an End User License

1  Agreement that exclusively requires adjudication in Missouri.  (Docket No. 11-2.)  Second,

2  the written distribution agreement between TaxWorks and Taxes of Puerto Rico contains a

3  venue selection provision requiring all disputes be adjudicated in Massachusetts.  (Docket

4  No. 11-2.)  TaxWorks moved to dismiss or, in the alternative, transfer the case to the United

5  States District Court for the Western District of Missouri.  (Docket No. 11.)  We grant their

6  motion for transfer.

7                                                                 **II.**
8
9                                                           **Legal Standard**
10
11 **A.      Motion to Dismiss Standard**

12       A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts to

13 establish a plausible claim for relief.  <u>See</u> Fed.R.Civ.P. 12(b)(6); <u>Ashcroft v. Iqbal</u>, 556 U.S.

14 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  In assessing

15 a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all

16 non-conclusory allegations as true, and draw any reasonable inferences in favor of plaintiff.

17 <u>San Geronimo Caribe Project, Inc. v. Acevedo-Vila</u>, 687 F.3d 465, 471 (1st Cir. 2012)

18 (citation omitted).

19       Federal Rule of Civil Procedure 12(b)(3) permits a party to move to dismiss for

20 improper venue before joining issue on any substantive point through the filing of a

21 responsive pleading.  <u>Hohn v. United States</u>, 524 U.S. 236, 248 (1998).

22 **B.      Motion for Transfer of Venue**

23       A district court may transfer a civil action to another district court or to any district

24 that the parties consented to for the convenience of parties and witnesses and if doing so is in

25 the interest of justice.  28 U.S.C. § 1404(a)  We have broad discretion in granting or denying

1 a motion for transfer.  See Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 64 (1st

2 Cir.2003).

3                                          **III.**

4

5                                    **Discussion**

6

7        The plaintiffs argue that their End User License Agreement with the defendants

8 should be treated as a contract of adhesion.  Because the venue selection provision at issue

9 was contained in an End User License Agreement, the plaintiffs maintain it is invalid,

10 allowing them to bring suit in the District of Puerto Rico.  We disagree with both

11 contentions.

12        Because the plaintiffs had an opportunity to read the user agreement and because they

13 explicitly communicated their assent to that agreement rather than return the software, the

14 agreement is a binding contract and the plaintiffs are required to follow the venue selection

15 clause contained in the agreement's terms.  The user agreement contained in the software

16 provided at its outset, in all capital letters:

17              YOU   AGREE   THAT   THIS   AGREEMENT   IS
18              ENFORCEABLE LIKE ANY WRITTEN NEGOTIATED
19              AGREEMENT SIGNED BY YOU. *LICENSOR IS WILLING*
20              *TO LICENSE THE SOFTWARE TO YOU ONLY ON THE*
21              *CONDITION THAT YOU ACCEPT ALL OF THE TERMS OF*
22              *THIS AGREEMENT.* YOU PROVIDE YOUR CONSENT TO
23              THE TERMS AND CONDITIONS OF THIS AGREEMENT
24              BY INSTALLING, LOADING OR OTHERWISE USING THE
25              SOFTWARE. IF YOU DO NOT AGREE TO ALL OF THE
26              TERMS AND CONDITIONS OF THIS AGREEMENT, DO
27              NOT USE THE SOFTWARE.
28
29 (Docket No. 11-3.)  TaxWorks designed their software to prevent installation unless the user

30 affirmatively clicked "Accept & Install".  Here, each of the plaintiffs clicked "Accept &

Install," assenting to the terms contained in the user agreement, including a clear and unambiguous venue selection clause:

> Governing Law; Forum. This agreement shall be governed by the laws of Missouri, without regard to choice of law or conflicts of law provisions. Licensor and you agree that exclusive jurisdiction of any dispute arising out of, or relating to, this Agreement or any dispute arising out of, or relating to, the Software or services provided in connection therewith shall be in courts located in the county of Jackson.

(Docket No. 11-2.)

In other words, TaxWorks' unwillingness to proceed with the transaction unless the user agreement was accepted and the plaintiffs express acceptance of the terms of the user agreement could not have been clearer.

The Seventh Circuit's analysis in ProCD v. Zeidenberg, 86 F.3d 1447 (7th Cir. 1996) illustrates why clauses like this one are enforceable. In ProCD, the Seventh Circuit held that even where terms are found inside a box of software—so called "shrinkwrap" license agreements—consumers who use the software after an opportunity to read the terms and fail to reject them by returning the product, assent to the formation of a contract and are bound by the license agreement's terms. ProCD, 86 F.3d at 1451. The Seventh Circuit noted that "Money now, terms later" is a practical way to form contracts, especially where consumers increasingly purchase software over the Internet as a downloadable file. Id. In rebutting the claim that a "shrinkwrap" agreement is an unlawful contract of adhesion, the Seventh Circuit offered the example of several common transactions—like the purchase of a ticket for travel or entertainment—where the consumer makes the purchase prior to getting the detailed terms of the contract. ProCD, 86 F.3d at 1450-01.

1    If a "shrinkwrap" license agreement, where any assent on the part of the consumer is

2    implicit, is valid, then it must logically follow that a "clickwrap" license agreement, where

3    the assent is explicit, is valid.  i.Lan Systems, Inc. v. Netscout Service Level Corp., 183

4    F.Supp.2d 328, 338 (D. Mass. 2002).    Here, the plaintiffs explicitly accepted the

5    "clickwrap", or user agreement, when they clicked on the prompt stating "Accept & Install."

6    The plaintiffs' counterarguments fail. They argue that other courts have invalidated

7    user agreements as contracts of adhesion, and that we should do the same.  To support this

8    proposition the plaintiffs rely, largely, on Step-Saver Data Systems, Inc. v. Wyse

9    Technology, 939 F.2d 91 (3rd Cir. 1991), and Arizona Cartridge Remanufacturers

10   Association Inc. v. Lexmark International Inc., 421 F.3d 981 (9th Cir. 2005).  The plaintiffs

11   plainly misstate the holding of Arizona Cartridge Remanufacturers Association, Inc.  That

12   case does not say, as the plaintiffs claim, that a user agreement is valid only when it is

13   printed on the outside of software packaging.  Instead, the case holds that user agreements

14   are legal because consumers can read and agree (or not) before proceeding to use a software

15   program.  The plaintiffs' reliance on Step-Saver is also of little help to our analysis:  Step-

16   Saver involved a "battle-of-the-forms" analysis in which the issue was not, as it is here, the

17   enforceability vel non of a "click-wrap" agreement, but whether a prior purchase order or a

18   later "shrink-wrap" agreement established the terms of the agreement between the parties.

19   Additionally, it is worth noting that Step-Saver is a persuasive authority that is now over

20   twenty years old, decided in a context that predated the advent of the iPhone and the

21   widespread usage of the internet.

22   The majority of courts to have considered the enforceability of user agreements have

23   concluded that those agreements are valid and enforceable.  See, e.g., Spivey v. Adaptive

1   Marketing, LLC, 660 F.Supp.2d 940 (S.D.Ill. 2009); Meridian Project Systems, Inc. v.

2   Hardin Const. Co., LLC, 426 F.Supp.2d 1101 (E.D.Cal. 2006); Lexmark Int'l, Inc. v. Static

3   Control Components, Inc., 387 F.3d 522, 563 n. 10 (6th Cir. 2004); Mudd-Lyman Sales &

4   Serv. Corp. v. United Parcel Service, Inc., 236 F.Supp.2d 907, 911-12 (N.D.Ill. 2002); I. Lan

5   Sys., Inc. v. Netscout Serv. Level Corp., 183 F.Supp.2d 328 (D.Mass. 2002); Adobe Sys. Inc.

6   v. Stargate Software Inc., 216 F.Supp.2d 1051 (N.D.Cal. 2002); Adobe Sys. Inc. v. One Stop

7   Micro, Inc., 84 F.Supp.2d 1086 (N.D.Cal. 2000); Pollstar v. Gigmania, Ltd., 170 F.Supp.2d

8   974, 980-81 (E.D.Cal. 2000); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997);

9   ProCD, 86 F.3d 1447 (7th Cir.1996).  While some courts have characterized user agreements

10  as contracts of adhesion and found them invalid, see, e.g., Step-Saver Data Systems, Inc.,

11  939 F.2d 91 (3rd Cir. 1991); Vault Corp. v. Quaid Software Ltd., 847 F.2d 255 (5th Cir.

12  1988), they are the minority view and we decline to follow their disfavored precedent.

13        Next, the plaintiffs argue that the user agreement is unenforceable because it did not

14  expressly provide that they could return the software for a refund if they did not agree to its

15  terms.  (Doc. No. 19 at 6.)  Under Missouri's UCC § 2-206, a buyer accepts goods when,

16  after an opportunity to inspect the goods, he fails to reject them.  The same is true under

17  Puerto Rico's commercial code, 10 L.P.R.A. § 1704, which provides a buyer a reasonable

18  period of time to inspect the "purchase of unseen goods." Cf. ProCD, 83 F.3d at 1452-53.

19  Thus, as a matter of law, the plaintiffs here had the right to return the software if they found

20  the user agreement objectionable.  None of them even attempted to do so.

21        The plaintiffs also argue that this user agreement is in direct conflict with the

22  distribution agreement signed by Taxes of Puerto Rico.  TaxWorks and Taxes Puerto Rico

23  entered into a written Software License and Distribution Agreement in late 2011.  (Docket

1   No. 11-2.)  Attached to the distribution agreement, and labeled as "Exhibit A", was a hard

2   copy of the user agreement that would control Taxes of Puerto Rico's use of the software it

3   licensed from TaxWorks.  Because the two agreements require disputes to be resolved in two

4   different fora—Missouri for the user agreement and Massachusetts for the distribution

5   agreement—the plaintiffs maintain that there is an irresolvable ambiguity that voids the

6   selection provisions.  We disagree.

7          The plaintiffs argue that because the venue selection provision in the main body of the

8   distribution agreement provided for venue in Massachusetts and the venue selection

9   provision in the attached user agreement provided for venue in Missouri, the contract as a

10  whole is ambiguous and the venue selection clauses are void.  Moreover, the plaintiffs also

11  point to the fact that both agreements contain clauses, Section 19 of the distribution

12  agreement and Section 10(B) of the user agreement, superseding any and all prior

13  agreements.  According to the plaintiffs, these clauses, coupled with the different fora

14  selected in each agreement, creates a clear and irresolvable contradiction.

15         Tacking at the problem from a slightly different angle than that chosen by the

16  plaintiffs, it seems to us that the operative issue here is determining what, if any,

17  disagreement exists between the distribution agreement and the user agreement.  The venue

18  selection provision in the main body of the distribution agreement applies to actions arising

19  out of or relating to the sale and distribution of the software generally.  Conversely, the

20  venue selection provision contained in the user agreement, attached to the distribution

21  agreement as Exhibit A, applies specifically for actions arising out of the use and

22  performance of the software.  It is a common rule of statutory construction that the specific

23  provision should prevail over the general.  <u>Edmonds v. United States</u>, 520 U.S. 651, 657

1    (1997) ("Ordinarily, where a specific provision conflicts with a general one, the specific

2    governs.").    In other words, the distribution agreement's generality makes way for the

3    specificity of the user agreement which was attached to the distribution agreement as a

4    controlling exhibit.    And here, the underlying merits dispute is specifically about the

5    functioning of the software—not more generally about the supply or distribution of the

6    product.  Moreover, any purported confusion on this matter should have been resolved by the

7    first page of the distribution agreement, where it states: "In the case of any conflict between

8    the terms in the body of this Agreement and the terms of any Exhibit, the terms of the

9    Exhibit shall control."  (Docket No. 11-2 at 1.)  Accordingly, the user agreement, including

10   its Missouri venue selection provision, applies in this case.

11        The remaining arguments offered by the plaintiffs are predicated on the

12   inconvenience of litigating in Missouri.  The plaintiffs argue that an appropriate balancing of

13   factors—including the convenience of the parties and witnesses; the availability of

14   documents and ease of access to sources of proof; the need to keep litigation consolidated—

15   makes Puerto Rico the proper forum to litigate the cause of action.  Fash Obalco, Inc. V.

16   M.K.M. Industries, Inc., 888 F.Supp. 344, 348 (D.P.R. 1995) (citations omitted).

17        We will not consider the plaintiffs' private interests, however.  "When parties agree to

18   a forum-selection clause, they waive the right to challenge the preselected forum as

19   inconvenient or less convenient for themselves or their witnesses, or for their pursuit of

20   litigation."  Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist., 134 S.Ct

21   568, 581-84 (2013).  Instead, we look to public interests, not private ones.  Id. at 583.  And

22   where the parties, as here, agreed to select a forum in advance of any dispute, the public

23   interest favors enforcing that agreement.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 at

1    31 (1988); see also Lambert v. Kysar, 983 F.2d 1110, 1117 (1st Cir. 1993).  As with any

2    contract, courts respect the will of the parties to bargain in advance.  The mere fact that a

3    venue may be inconvenient to the plaintiffs does not make the venue selection clause

4    unreasonable, especially since the possibility of inconvenience was known and contemplated

5    at the time of executing the agreements.  See In re Mercurio 402 F.3d 62, 66 (1st Cir. 2005)

6    (quoting Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)); see also Royal Bed

7    & Spring Co. v. Famossul Industria, 906 F.2d 45, 49 (1st Cir.1990).  Thus, "[w]hile a

8    plaintiff's choice of forum is ordinarily given deference by the courts, this deference is

9    inappropriate when the parties have entered into a contract providing for a different forum."

10   Outek Caribbean Distrib., Inc. v. Echo, Inc., 206 F.Supp.2d 263, 266 (D.P.R. 2002) (citation

11   omitted).  Here, the parties bargained to adjudicate future software disputes in Missouri, and

12   that is what we will require.

13         We find that a transfer of venue to the United States District Court for the Western

14   District of Missouri is appropriate.  The parties clearly and unambiguously intended that any

15   disputes arising under the user and distribution agreements be settled in the Western District

16   Court of Missouri.  The plaintiffs have not alleged any fraud or overreaching by the

17   defendants in the negotiations leading up to or in the signing of the contract.  We find, then,

18   that the parties freely submitted themselves to the jurisdiction of the District Court of

19   Missouri.  Our decision is limited to the transfer pursuant to section 1404(a).  The United

20   States District Court for the Western District of Missouri shall determine the merits of the

21   case.

**IV.**

**<u>Conclusion</u>**

**THEREFORE**, the defendant's motion for transfer to the United States District Court for the Western District of Missouri, (Docket No. 10), is **GRANTED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 20th day of  March, 2013.

<u>S/José Antonio Fusté</u>
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE
